**HARRIS COUNTY HOSPITAL DISTRICT, Appellant**

v.

**TEXTAC PARTNERS I, a Texas General Partnership, Houston ISD, Houston Community College, City of Houston, and Harris County, Appellees.**

No. 14–06–00437–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 1, 2008.

Douglas P. Ray, Bruce S. Powers, Houston, for appellant.

Christopher M. Swanson, Thomas E. Sheffield, Houston, for appellees.

Panel consists of Justices FOWLER, GUZMAN and Senior Justice HUDSON.*

## OPINION

WANDA McKEE FOWLER, Justice.

In this appeal, the Harris County Hospital District ("Hospital District") appeals the trial court's dismissal of its condemnation action, in which it sought to acquire property owned by Textac Partners I ("Textac") as part of an LBJ Hospital expansion project. In its first three issues, the Hospital District contends that the trial court erred in granting Textac's motion to dismiss and in rendering judgment on a jury's verdict in favor of Textac for damages and attorney's fees. In its fourth issue, the Hospital District contends that Textac consented to the taking of its property because it acquiesced in the payment of its taxes through the taxing authorities' withdrawal of a portion of the special commissioners' award from the registry of the court.

In addition, Textac argues that the hearing before the trial court was actually a trial and the trial judge resolved the fact issues created by the various affidavits and relevant statutes and rules in Textac's favor. Textac claims we should review the order as we do any bench trial, and uphold it if any evidence supports the court's findings. The Hospital District responds that

* Senior Justice Harvey Hudson sitting by as-    signment.

we should look to the substance of the motion to dismiss to help us assess the nature of the hearing below and therefore our review of it. According to the Hospital District, the motion to dismiss was actually a plea to the jurisdiction that we should review de novo.

First, we hold that Textac did not consent to the condemnation action by acquiescing in the taxing authorities' withdrawal of property taxes from the court registry. Next, we conclude that the motion to dismiss filed by Textac was actually a motion for summary judgment to be reviewed under Rule 166a(c) of the Texas Rules of Civil Procedure. Finally, we hold that the trial court erred in granting Textac's motion to dismiss because fact issues exist. Because the motion to dismiss was granted erroneously, we reverse the order of dismissal and the subsequent judgment following the jury trial, and remand to the trial court.

## A. Factual and Procedural Background

### 1. The Hospital District Condemns the Land; Special Commissioners are Appointed and Award Amounts to Textac.

In 2004, the Hospital District petitioned the county court to condemn twenty-six tracts of land adjacent to LBJ Hospital near downtown Houston. The stated purpose for condemning this land was that the Hospital District's Board of Managers found that a public necessity and convenience existed for acquiring the land as part of the LBJ Hospital Expansion Project.[1]

The land was owned by Textac, which had acquired the tracts over a period of years. Special commissioners were appointed to determine the appropriate compensation for Textac's land; the Hospital District deposited the amount of compensation awarded to Textac into the registry of the court. Various taxing authorities[2] later moved to withdraw from the registry the amount of delinquent ad valorem taxes they claimed Textac owed on its land; Textac did not object to this withdrawal.

### 2. Textac and the Hospital District File Competing Motions in the Trial Court.

Almost immediately after the condemnation and award, Textac began to object to the condemnation on two primary bases. First, it claimed that no public necessity existed for the taking. Second, and more importantly, it claimed that the Harris County Commissioners Court exerted improper influence over the Hospital District, which, by statute, it alleged to be a political body intended to act completely independent of the Commissioner's Court. Virtually all of the pleadings on both sides addressed these two issues.

Textac filed objections and exceptions to the special commissioners' awards and, central to this appeal, a motion to dismiss the condemnation action. In the motion to dismiss, Textac claimed, among other things, that there was no public necessity for the taking of its property, and that the decision to condemn its property "was accompanied by fraud, motivated by graft and corruption[,] and results from the widespread and systematic gross abuse of

---

1. The Hospital District originally filed separate petitions for each tract of land, and the separate cases were later consolidated. The Hospital District also sought to acquire other tracts of land for the LBJ Hospital Expansion Project, but they are not relevant to this appeal.

2. The taxing authorities included the Houston Independent School District, the City of Houston, the Houston Community College System, and Harris County.

discretion on the part of popularly elected Harris County public officials."

Thereafter, the Hospital District moved for a partial summary judgment, asserting that as a matter of law a public necessity existed for the condemnation action, that good faith negotiations had occurred, and that it had complied with the statutory prerequisites for condemnation. The Hospital District also claimed that Textac waived the right to contest the Hospital District's exercise of eminent domain because it permitted the taxing authorities to withdraw amounts owed from the court registry without objection, and it benefitted from the withdrawal.

### 3. Textac Responds to the Motion for Summary Judgment and Supplements its Motion to Dismiss with Additional Details on Bribe Allegations.

In response to the Hospital District's motion for summary judgment and in further support of Textac's motion to dismiss, Textac provided more detailed allegations against the Hospital District and also the Harris County Commissioner's Court, which was not a party. These allegations are meant to support its claims that the Hospital District engaged in condemnation fraud and arbitrary and capricious conduct that precludes condemnation.

Specifically, Textac claimed that the Commissioners Court sought to condemn Textac's property in retaliation against Mr. Les Allison, a partner of Textac, because he refused to pay a bribe solicited on behalf of County Commissioner El Franco Lee.[3] Textac also claimed that the Hospital District's then-CEO, John Guest, concealed relevant information from the Board of Managers of the Hospital District

concerning Allison's proposals. Finally, Textac asserted that the Commissioners Court initiated a series of events calculated to obtain control over Textac's property, including requiring the Hospital District to follow the County's guidelines for acquiring property and to use the Harris County Right–of–Way Department. Consequently, Textac argued, the Hospital District's Board of Managers ceded to the commissioners court's "mandate" to condemn Textac's property, instead of making an independent, informed decision concerning the condemnation.[4]

### 4. The Hospital District Files a Supplemental Motion for Partial Summary Judgment Showing Its Statutory Connection with the Commissioners Court.

The Hospital District then filed a supplemental motion for partial summary judgment, in which it presented argument and attached evidence it contended controverted Textac's allegations. The Hospital District also asserted that it was "not an autonomous entity capable of operating completely free and clear" of the Commissioners Court; rather, the "[t]he legislative scheme set out in the Health & Safety Code contemplates that there will be a great deal of oversight by the Commissioners Court." In further support of this assertion, the Hospital District cited Texas Health and Safety Code section 281.049, which provides that "[t]he commissioners court may prescribe: (1) the method of making purchases and expenditures by and for the [hospital] district; and (2) accounting and control procedures for the district." *See* TEX. HEALTH & SAFETY CODE § 281.049(a).

---

**3.** The property is located in Commissioner Lee's district.

**4.** The Hospital District filed objections and moved to strike evidence contained in Tex-

tac's response to its motion for partial summary judgment, but the record does not show that the trial court ruled on the objections.

### 5. Textac Files a Combined Response to the Supplemental Summary Judgment Motion and Bench Memorandum in Support of Its Motion to Dismiss.

In response, Textac filed a combined "Response to Plaintiff's Supplemental Motion for Partial Summary Judgment and Bench Memorandum in Support of Motion to Dismiss," contesting the Hospital District's characterization of the relationship between the Commissioners Court and the Hospital District. Among other things, Textac argued that the Hospital District is an independent governmental entity, and that section 281.054 of the Texas Health and Safety Code explicitly gives it—not the Commissioners Court—the power of eminent domain to acquire property located in the district if the property interest is necessary or convenient for the exercise of the rights or authority conferred on the hospital district. *See* TEX. HEALTH & SAFETY CODE § 281.054. Further, under section 281.050 of the Health and Safety Code, the authority of the Commissioners Court is expressly limited to the power of "approval" of the Hospital District's independent decision to purchase or condemn real property.

Section 281.050, entitled "Powers Relating to District Property, Facilities, and Equipment," provides as follows:

With the *approval* of the commissioners court, the board may construct, condemn, acquire, lease, add to, maintain, operate, develop, regulate, sell, exchange, and convey any property, property right, equipment, hospital facility, or system to maintain a hospital, building, or other facility or to provide a service required by the district. Approval of the commissioners court shall

be required for the sale or lease of a hospital facility regardless of the provisions of Section 285.051.

TEX. HEALTH & SAFETY CODE § 281.050 (emphasis added). Therefore, Textac argued, in the absence of specific legislative authority, the Commissioners Court could not "substitute its will in order to determine the public necessity of the taking." It also argued that the condemnation of property did not fall under the procurement statute cited by the Hospital District, because that statute applied only to the procurement of goods and services by purchase, not the acquisition of real property by condemnation.

### 6. The Hearing on the Motions and the Trial on Damages.

Over a period of two days, the trial court held a hearing on the motions.[5] The court heard extensive arguments by the parties, took judicial notice of the motions, responses, and evidence previously submitted, and admitted additional exhibits in evidence. At the conclusion of the hearing, the court announced that it was going to dismiss the Hospital District's action, but it would delay signing the order for two weeks to allow the parties time to attempt to resolve the dispute. Apparently, no resolution was reached, and on April 18, 2006, the trial court signed the order of dismissal. The order recited that the Hospital District did not have the right to condemn the property, and directed the Hospital District to surrender possession of the property to Textac.

Thereafter, the trial court conducted a jury trial on Textac's damages for the Hospital District's temporary possession of

---

**5.** Although the reporter's record of the hearing titles it a hearing on "Defendant's Motion to Dismiss," the trial court's order of dismissal reflects that "plaintiff's motion for partial summary judgment and defendant's motion to dismiss this condemnation proceeding" were the matters heard.

the property and on its attorney's fees.[6] The trial court rendered a judgment on the jury's verdict in favor of Textac for $1,975,800.00 as damages, $889,670.00 in attorney's fees, $40,000.00 in attorney's fees in the event the Hospital District appealed the judgment to the Texas Court of Appeals, $40,000.00 in attorney's fees in the event the Hospital District appealed to the Texas Supreme Court, and $180,000.00 for expenses. This appeal followed.

### B. Did Textac Waive Its Right to Challenge the Condemnation by Allowing Taxing Authorities to Use Funds from the Court's Registry to Pay Taxes Owed on the Condemned Property?

In its fourth issue, the Hospital District contends that Textac has waived the right to contend the taking of its property was unlawful because it did not object when the taxing authorities asked that a portion of the special commissioners' award be withdrawn from the registry of the court to pay taxes owed on the condemned property. The parties apparently agree that the special commissioners made an award, the Hospital District deposited the amount of the award into the court registry, and the taxing authorities subsequently moved to withdraw a portion of the award to pay taxes owed on the property from the court registry. The parties do not discuss the amount of money withdrawn, except that Textac distinguishes the withdrawal here of "a small portion" of the award from cases in which the entire award was withdrawn. If the Hospital District is correct, this issue would dispose of the appeal; therefore, we address it first.

### 1. The Hospital District's Arguments in Favor of Waiver.

The Hospital District primarily relies on the rule announced by the Texas Supreme Court in *State v. Jackson*, in which the Court held that, by accepting the award of the special commissioners, the landowner was precluded from contesting the State's right to take his property:

> After an award has been made, and the money deposited in the registry of the Court and the landowner has withdrawn the same, he cannot thereafter contend that the taking was unlawful. In legal contemplation, he has consented to such taking and will not be permitted to retain his compensation and at the same time assert that the condemning authority had no right to take his property under the eminent domain power.

*See State v. Jackson*, 388 S.W.2d 924, 925 (Tex.1965).

The Hospital District argues that Textac is not entitled to contest the property's condemnation because it did not object to the withdrawal, and because it benefitted when the money was used to pay taxes owed on the property. In support of this argument, the Hospital District cites *Sunbelt Props. v. State*, No. 08–02–00322–CV, 2003 WL 756718 (Tex.App.-El Paso Mar. 6, 2003, no pet.) (mem.op.), in which the court held that when the property owner and the mortgagees withdrew the award from the court registry, even though the owner only received a portion of the award directly, the owner received the benefit of the entire award because it discharged the owners's mortgage debt and extinguished the interest of the mortgagees in the property. *Id.* at *4.

---

**6.** After the order of dismissal was signed, the Hospital District moved to recuse the trial judge, Judge Gary Michael Block. The record reflects only that, upon referral, this motion was denied. However, Judge James Blackstock presided over the trial on Textac's damages.

The Hospital District further asserts that, under the provisions of Texas Tax Code section 32.01(a), a tax lien attaches to property on January 1 of each year to secure payment of all taxes imposed for the year on the property. *See* TEX. TAX CODE § 32.01(a). Therefore, the taxing authorities are lienholders with a security interest in the property and the proceeds thereof. *See Nalle v. Eaves,* 5 S.W.2d 500, 501 (Tex. Comm'n App.1928) ("It has been repeatedly held that the word 'owners,' when used in special assessment, eminent domain, or condemnation statutes, embraces the holders of every kind of lien, claim, or equity in the property involved."). According to the Hospital District, when Textac allowed its lienholders to withdraw a portion of the award money in the registry of the court, rather than paying the tax bill before the taxing authorities took that action, Textac received a benefit from the award even though the amount withdrawn was less than the full award.

**2. The Case Law and Circumstances of this Case Do Not Support the Hospital District's Position.**

■  The Hospital District does not direct us to any case in which a landowner forfeited the right to challenge a condemnation action because a taxing authority withdrew from the court registry the amount of taxes owed on the property sought to be condemned, and we have found none. However, in *Tigner v. City of Angleton,* 949 S.W.2d 887, 891 (Tex.App.-Houston [14th Dist.] 1997, no pet.), this Court held that the rule of *State v. Jackson* precluded the owner of a 50% interest in property from contesting the condemnation action when the owners of the other 50% interest had withdrawn their portion of the award from the court registry, but she had not. In a, we limited the holding of *Tigner* to the facts of that case, stating, "This opinion should not be read to apply

to a situation in which a landowner has not requested that any funds be withdrawn or objects to any funds being withdrawn. That issue is not before us and we expressly do not address it." *Id.* at n. 2.

Having considered the issue on the record before us today, we conclude that the rule of *State v. Jackson* does not apply here. In this case, the money that was withdrawn was not used for a purpose inconsistent with Textac's contest of the condemnation; the money was used to pay taxes owing on the property. And, it is significant that Textac did not file the motion to have the funds withdrawn, the taxing authorities did. Therefore, we do not view this withdrawal as analogous to the situation in *Tigner.*

We are also reluctant to find waiver in this case because the record is not well developed concerning the relevant facts. The taxing authorities' motion appears in the record only as an exhibit to the Hospital District's partial motion for summary judgment, and any orders granting the motion are not included in the record. Further, the parties do not identify the amount of the award the Hospital District deposited into the registry of the court or the amount withdrawn by the taxing authorities, nor have they directed us to any place in the record where these amounts may be found. We are therefore unable to determine whether the amounts involved may contribute to our analysis in any meaningful way.

We overrule the Hospital District's fourth issue.

**C. Did the Trial Court Err or Abuse Its Discretion in Granting Textac's Motion to Dismiss the Hospital District's Condemnation Action?**

In three issues, the Hospital District contends that the trial court erred in (1)

granting Textac's motion to dismiss the condemnation action, (2) concluding that the Hospital District does not have the right to condemn the property, and (3) rendering judgment in favor of Textac for damages and attorney's fees based on the erroneous dismissal.

### 1. Standard of Review.

Before addressing the substance of the Hospital District's issues, we must first determine the appropriate standard of review. Both parties agree that Texas Health and Safety Code section 281.050 governs the resolution of this case. *See* TEX. HEALTH & SAFETY CODE § 281.050 (providing that hospital district board may condemn property with the approval of the commissioners court). Both parties also agree that statutory construction is a question of law that we review de novo. *See In re Forlenza,* 140 S.W.3d 373, 376 (Tex. 2004). Beyond this, however, the parties disagree as to the standard of review we should apply, primarily because they disagree on how to characterize the proceedings below.

### a. Textac Claims the Hearing Below was a Trial on the Merits; the Hospital District Claims it was a Plea to the Jurisdiction.

The Hospital District contends that the style of the request for relief—in this case a "motion to dismiss"—does not dictate the standard of review we should apply; instead, we should look to the substance of the motion to determine the proper standard of review. *See Sheth v. Dearen,* 225 S.W.3d 828, 831 n. 2 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (applying de novo rather than abuse of discretion standard of review to motion to dismiss because "[t]he proper standard of review to be employed is dictated by the substance of the issue to be reviewed as opposed to the procedural vehicle through which that issue is developed."). According to the Hospital District, the proceeding below was the functional equivalent of a plea to the jurisdiction, and therefore this court's review of the trial court's ruling should be de novo. *See State v. Holland,* 221 S.W.3d 639, 642 (Tex.2007).

Textac responds that its motion to dismiss did not raise a jurisdictional challenge, but instead sought to dismiss the case on the merits for failure to prove the right to condemn. Textac characterizes the proceeding below as follows: "After hearing the evidence, the court simply dismissed the case on its merits, finding by a preponderance of the evidence that [the Hospital District's] proof was insufficient to demonstrate compliance with Tex. Health & Safety Code § 281.050." Textac asserts that, because the Hospital District did not request findings of fact and conclusions of law, the trial court's judgment necessarily implies all findings of fact necessary to support it contained in the record. *See Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 52 (Tex.2003). Accordingly, Textac maintains that the implied findings of fact which underpin the ultimate legal conclusion should be reviewed for legal and factual sufficiency. *See Brocail v. Anderson,* 132 S.W.3d 552, 556 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (although resolution of special appearance is a legal issue, when the appellate record includes the reporter's and clerk's records, implied findings of fact supporting resolution may be challenged for legal and factual sufficiency). In particular, Textac asserts that the "outcome-determinative" fact-finding the court impliedly found is "that Commissioners Court 'exerted influence,' 'mandated,' or compelled the condemnation of the subject property in a manner inconsistent with a clear reading of § 281.050."

### b. The Motion to Dismiss Appears to be a Motion for Summary Judgment.

We disagree with the parties' respective positions. We do agree with the Hospital District, however, that we must look to the substance of the issue rather than the procedural vehicle employed to determine the appropriate standard of review. *See Sheth,* 225 S.W.3d at 831 n. 2. After carefully reviewing the motions and responses filed below, we conclude that Textac's motion to dismiss is the functional equivalent of a motion for summary judgment directed to the merits of the Hospital District's authority to condemn its property pursuant to section 281.050. We base this conclusion on:

- the nature and substance of the issues raised in Textac's motion to dismiss, which Textac candidly acknowledges was directed to the merits of its claims;
- Textac's concurrent development of the same issues in both its motion to dismiss and in response to the Hospital District's motions for partial summary judgment; and
- the treatment of the same or similar issues raised in other condemnation cases.

**(1) Textac's Motion to Dismiss Does Not Address Jurisdictional or Procedural Issues, But Instead Addresses the Merits of its Claims.**

First, the issues discussed in the motion are not the type of issues typically contained in a motion to dismiss. Generally, a "motion to dismiss" does not address claims on the merits. It is directed to procedural or avoidance issues. *See Van-Zandt v. Holmes,* 689 S.W.2d 259, 261 (Tex.App.-Waco 1985, no writ) (noting that involuntary dismissal of a plaintiff's action is generally limited to situations such as those involving a plea in abatement, special exceptions not cured by amendment, mootness, lack of prosecution, or lack of jurisdiction); *Lane v. Baxter Healthcare Corp.,* 905 S.W.2d 39, 41 (Tex.App.-Houston [1st Dist.] 1995, no writ) ("[A] dismissal is not a proper method to adjudicate the merits of a case."); *see also Deep Water Slender Wells, Ltd. v. Shell Intern. Exploration & Prod., Inc.,* 234 S.W.3d 679, 695 (Tex.App.-Houston [14th Dist.] 2007, pet. filed) (recognizing that dismissal of all claims to enforce a forum selection clause is "a non-merits basis for dismissal").[7]

Unlike typical motions to dismiss, this one did address the claims on the merits. Textac's motion was based on the merits of its claims that the Hospital District engaged in fraud, acted in an arbitrary and capricious manner, or abused its discretion when it sought to condemn Textac's property.[8] Textac itself admits on appeal that its motion to dismiss went "squarely to the merits of the case." Even the trial court's order of dismissal reflects that the trial court resolved the issue on the merits by deciding that the Hospital District "does not have the right to condemn the subject property" and ordering possession of the property returned to Textac.

Consequently, because Textac's motion went to the merits of its case—not to

---

7. We express no opinion concerning whether a motion to dismiss is an appropriate procedural vehicle in which to raise claims such as those Textac presented below. The parties have not raised this argument on appeal and we do not consider it. The issue before us is solely the appropriate standard of review to apply on appeal.

8. Textac conceded below and on appeal that it was not asserting that the Hospital District failed to comply with the statutory requirements of Texas Property Code section 21.012. Therefore, the proceeding was not subject to abatement to allow the Hospital District to satisfy the requirements. *See Hubenak v. San Jacinto Gas Transmission Co.,* 141 S.W.3d 172, 184 (Tex.2004).

procedural issues—it appears to be more the functional equivalent of a motion for summary judgment than a motion to dismiss.[9]

**(2) In Textac's Combined Motion to Dismiss and Response to Motion for Summary Judgment, the Reasons Given to Grant the Motion to Dismiss are the Same as the Reasons to Deny the Summary Judgment Motion.**

Textac's filings below and the hearing itself lend additional support to treating its motion to dismiss substantively as a motion for summary judgment. The motion is completely intertwined with Textac's responses to the Hospital District's motion for partial summary judgment and supplemental motion for partial summary judgment. Textac's initial motion to dismiss was cursory and not supported by evidence. Instead, Textac detailed its allegations and offered supporting evidence for its motion to dismiss in its response to the Hospital District's motion for partial summary judgment. In that filing, Textac asserted the following:

- "Textac will establish *both herein and further in support of its Motion to Dismiss* that the finding of public necessity in this case was precipitated by fraud, bad faith, and abuse of public office"; and
- "If the terms 'fraud' and 'arbitrary and capricious' are to have any meaning then they would surely apply to the

illegal and unconscionable actions evidenced *both herein and [in] support of Textac's Motion to Dismiss,* as well as the evidence produced at the court's hearing of these matters."

(emphasis added).

Likewise, in response to the Hospital District's supplemental motion for summary judgment, Textac filed its "Response to Plaintiff's Supplemental Motion for Partial Summary Judgment and Bench Memorandum in Support of Motion to Dismiss," consolidating its arguments and supporting evidence into a single document.

In addition, both the motion to dismiss and the summary judgment motions were presented to the judge at the same time, no live witnesses were presented to the judge, and the lawyers presented legal arguments about the effect of the evidence before the judge, just as they would in a complex summary judgment hearing. And the judge ruled at the end of the hearing, apparently based on the arguments made to him and the evidence discussed during arguments, just as might happen in a summary judgment case.

**(3) The Case Law Does Not Support Textac's Position.**

The third reason we have decided to view the motion to dismiss as a summary judgment is the state of the case law. Neither party has identified a case in

---

9. Textac filed its motion to dismiss pursuant to Texas Property Code section 21.019(c), which enables the trial court to make the landowner whole if he prevails and to discourage the condemnor from seeking condemnation unfairly or irresponsibly. *See Malcomson Road Util. Dist. v. Newsom,* 171 S.W.3d 257, 275 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). This section does not indicate any particular grounds for a motion to dismiss, and it is not limited to motions to dismiss as the only vehicle by which a landowner may obtain relief:

A court that hears and grants a *motion to dismiss* a condemnation proceeding made by a property owner seeking a judicial denial of the right to condemn *or that otherwise renders a judgment denying the right to condemn* may make an allowance to the property owner for reasonable and necessary fees for attorneys, appraisers, and photographers and for the other expenses incurred by the property owner to the date of the hearing or judgment.

TEX. PROP.CODE § 21.019(c) (emphasis added).

which a court discusses the appropriate standard of review to apply to the dismissal of a condemnation action when a property owner raises claims similar to Textac's.[10] However, often such claims are the subject of motions for summary judgment or, when fact issues exist, jury trials. *See, e.g., Zboyan v. Far Hills Util. Dist.,* 221 S.W.3d 924, 928–931 (Tex.App.-Beaumont 2007, no pet.) (affirming trial court's grant of partial summary judgment in favor of condemnor and denying landowner's motion for partial summary judgment alleging that condemnor abused its discretion, exhibited bad faith, and failed to adequately investigate alternative property); *Newsom,* 171 S.W.3d at 273 (affirming denial of landowner's motions for summary judgment when landowner failed to conclusively prove that the condemnor acted arbitrarily and capriciously); *Ludewig v. Houston Pipeline Co.,* 773 S.W.2d 610, 614–15 (Tex.App.-Corpus Christi 1989, writ denied) (affirming trial court's disregard of jury's finding that condemnor acted arbitrarily and capriciously); *Houston Lighting & Power Co. v. Klein Indep. Sch. Dist.,* 739 S.W.2d 508, 514–15 (Tex.App.-Houston [14th Dist.] 1987, writ denied) (holding trial court did not abuse its discretion in submitting jury question whether utility

company abused its discretion in condemning property for easement); *City of Houston v. Hamons,* 496 S.W.2d 662, 663, 665 (Tex.Civ.App.-Houston [14th Dist.] 1973, writ ref'd n.r.e.) (affirming jury finding that condemnor acted arbitrarily or capriciously); *Boucher v. Tex. Tpk. Auth.,* 317 S.W.2d 594, 598–99 (Tex.Civ.App.-Texarkana 1958, no writ) (affirming grant of partial summary judgment in favor of condemnor against landowner alleging fraud and bad faith).

In fact, in support of its contention that fact findings are often necessary for a trial court to enter judgment on the issue of a condemnor's right to condemn, Textac relies on *Malcomson Road Utility District v. Newsom,* 171 S.W.3d at 273. However, *Newsom* actually supports our conclusion. *Newsom* involved competing motions for summary judgment between a utility district and the landowner. Much the same as here, the trial court denied the utility district's motions for partial summary judgment, granted Newsom's motions for summary judgment, and denied the utility district the right to condemn. *Id.* at 260–61. On review, the court of appeals held that, among other things, a fact issue existed as to whether the utility district's

---

10. This Court has located one case, *Valero Eastex Pipeline Co. v. Jarvis,* in which the appellate court considered the standard of review to apply to a trial court's grant of the landowners' motion to dismiss a pipeline company's condemnation action. *See* 990 S.W.2d 852 (Tex.App.-Tyler 1999, pet. denied). In that case, the pipeline company argued that the trial court erred because it had found that it was not necessary for the company's pipeline to be located on the landowners' property. *Id.* at 856. The appellate court stated that it would review the issue de novo because the trial court dismissed the case on a question of law. *Id.* The court stated that, because the statute authorizing the company to condemn property did not require it to show that the property was necessary for public use, its determination of the

necessity for acquiring the property was conclusive unless the landowners could prove fraud, bad faith, abuse of discretion or arbitrary and capricious action. *Id.* The landowners did not plead any of these defenses and attached no evidence to their motion to dismiss. Consequently, the court sustained the pipeline company's issue and held that "the trial court was without authority to grant the motion to dismiss." *Id.* Similarly, and consistent with summary judgment review, we apply the de novo standard, but unlike the *Valero* case, we must determine whether the Hospital District's arguments and evidence in response to Textac's motion raised genuine issues of material fact that preclude a finding that Textac is entitled to the relief it seeks as a matter of law.

actions were arbitrary and capricious, and it remanded the case for a determination of the issue. *Id.* at 273, 280. Thus, the only formal difference between *Newsom* and this case is that Newsom's challenge to the utility district's condemnation action was presented in the procedural vehicle of summary judgment motions, while Textac chose the procedural vehicle of a motion to dismiss. Were we to analyze this case differently than the *Newsom* court did based on this tenuous distinction, we would be acting contrary to our directive to determine the standard of review based on the substantive issues presented rather than the procedural vehicle used. *See Sheth,* 225 S.W.3d at 831 n. 2.

■■■ For these reasons, we conclude that the appropriate standard of review to apply to this case is the standard applied to a trial court's grant of a summary judgment. The propriety of summary judgment is a question of law; therefore, we review the trial court's decision de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994). Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex.2005). We consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference in favor of the nonmovant and resolving any doubts against the motion. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex. 2006). We review a summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Wal–Mart Stores, Inc. v. Spates,* 186 S.W.3d 566, 568 (Tex.2006) (per curiam) (citing *City of Keller v. Wilson,* 168 S.W.3d 802, 822–23 (Tex.2005)).[11]

Having determined the appropriate standard of review, we turn to the substance of the Hospital District's issues.

**2. Analysis of the Hospital District's Issues.**

**a. The Law Relevant to Condemnation for Public Use.**

■■■ Private property may only be taken for a public use. *Borden v. Trespalacios Rice & Irrigation Co.,* 98 Tex. 494, 86 S.W. 11, 15 (1905); *see* TEX. CONST. art. I, § 17. The question of whether a given set of facts constitutes a public or private use is one of law for the court. *Hous. Auth. of City of Dallas v. Higginbotham,* 135 Tex. 158, 143 S.W.2d 79, 83 (1940); *Tenngasco Gas Gathering Co. v. Fischer,*

---

11. Even if we were to agree with the Hospital District that we should view the motion to dismiss as a plea to the jurisdiction, the outcome would be the same. When a plea to the jurisdiction challenges the pleadings, the trial court must determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *See State v. Holland,* 221 S.W.3d at 642; *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). Thus, when deciding a plea to the jurisdiction, the trial court should not reach the merits of the case. *Id.* In some instances, however, a plea to the jurisdiction may require the court to consider evidence pertaining to jurisdictional facts. *Holland,* 221 S.W.3d at 642; *Miranda,* 133 S.W.3d at 227–28. When the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Miranda,* 133 S.W.3d at 227. The *Miranda* Court acknowledged that this standard "generally mirrors that of a summary judgment" and so "preserve[s] the parties' right to present the merits of their case at trial." *Id.* at 228. Thus, a plea should not be granted if a fact issue is presented as to the court's jurisdiction. *Holland,* 221 S.W.3d at 643.

653 S.W.2d 469, 474 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.). However, a condemning authority's discretion to condemn land for a public purpose is nearly absolute in the absence of proof that the condemnor acted fraudulently, in bad faith, or arbitrarily and capriciously. *See Newsom,* 171 S.W.3d at 268–69; *Ludewig,* 773 S.W.2d at 614; *Bradford v. Magnolia Pipe Line Co.,* 262 S.W.2d 242, 246 (Tex.Civ. App.-Eastland 1953, no writ); *Jones v. City of Mineola,* 203 S.W.2d 1020, 1022 (Tex.Civ.App.-Texarkana 1947, writ ref'd). Or, as the Texas Supreme Court stated in *Higginbotham,* the legislative declaration that a use is public creates a presumption in its favor, and will be binding upon the courts unless such use is "clearly and palpably of a private character." *Higginbotham,* 143 S.W.2d at 83.

■■■■ The term "fraud" as applied to a condemnor's decision to institute condemnation proceedings means "any act, omission or concealment, which involved a breach of legal duty, trust or confidence, justly reposed and . . . injurious to another, or by which an undue and unconscientious advantage is taken of another." *Wagoner v. City of Arlington,* 345 S.W.2d 759, 763 (Tex.Civ.App.-Fort Worth 1961, writ ref'd n.r.e.). The term "arbitrary and capricious" as applied to the condemnor's action means "willful and unreasoning action, action without consideration and in disregard of the facts and circumstances [that] existed at the time condemnation was decided upon, or within the foreseeable future." *Id.; see also Houston Lighting & Power,* 739 S.W.2d at 515 (holding trial court did not abuse its discretion in submitting jury instruction defining "arbitrary and capricious" consistently with *Wagoner* and other authorities). If the purpose for which condemnation was sought could in reasonable minds in good faith be deemed to be a public one, then

the condemnation proceedings are justifiable and lawfully authorized. *Wagoner,* 345 S.W.2d at 763.

**b. Textac's Allegations Regarding Fraud and Arbitrariness and Capriciousness.**

■■■ Textac contends that the trial court dismissed the Hospital District's action because it found that the Hospital District failed to prove it had complied with Health and Safety Code section 281.050. The ultimate issue of a condemnor's authority to condemn is a legal question. However, Textac, as the movant, had the burden to plead and prove that the Hospital District's action was founded in fraud or was arbitrary and capricious. *See Newsom,* 171 S.W.3d at 269; *Wagoner,* 345 S.W.2d at 762–63; *Jones,* 203 S.W.2d at 1022.

As outlined above, Textac's claims included these allegations:

- the condemnation action was in retaliation for Mr. Allison's refusal to pay a bribe sought on behalf of County Commissioner El Franco Lee;
- the Hospital District's then-CEO concealed relevant information from the Board of Managers that was essential to an informed evaluation of the need for the property;
- the Commissioners Court mandated that the Hospital District use its guidelines for purchasing property and the Harris County Right–of–Way Department in an effort to control the condemnation process and the flow of information to the Board;
- the Commissioners Court was willfully indifferent to the Hospital District's statutory independence; and
- the Hospital District abdicated its responsibilities to make an independent determination of the public necessity for taking Textac's property.

Textac's supporting evidence included affidavits, deposition testimony, documentary exhibits, and audiotaped telephone conversations and their transcripts.

### c. The Hospital District's Evidence Demonstrating a Public Necessity for Condemnation.

The Hospital District responded with arguments and evidence it contends refuted Textac's allegations. To demonstrate that a public necessity existed for the condemnation, the Hospital District submitted its board's April 29, 2004, resolution decreeing that a public necessity and convenience existed for the LBJ Hospital Expansion Project, and authorizing the purchase or condemnation of tracts within the project area. The Hospital District supported this evidence with, among other things, the affidavit of David Lopez, the Hospital District's CEO, explaining that the acquisition of property to the west of LBJ Hospital, including Textac's property, was necessary to carry out the expansion of the LBJ Hospital in keeping with the goals set out in the District's "2015 Plan." The 2015 Plan was adopted to meet the future public health care needs of the people of Harris County, and was before the court.

### d. The Evidence Relating to the Alleged Bribe Attempt.

One of the ways in which Textac attacked the validity of the condemnation of its property was to show that it actually was done in retaliation for Allison's refusal to pay a bribe. In support of this, Textac offered the affidavit of Les Allison, a partner of Textac. In the affidavit, Allison averred that in early 1998, he met with a "Bill Lee," who claimed he was a representative of Commissioner L. Franco Lee and was contacting Allison at Commissioner Lee's request regarding his interest in developing Textac's property. Further, Allison stated that this individual claimed he was a "real estate advisor" to Commissioner Lee and he offered to provide "unspecified services" for Textac in return for $50,000, which Allison concluded was an improper effort to solicit money from him. Textac also submitted the affidavit of Jack Abercia, Harris County constable for Precinct One, which it contended corroborated Allison's allegation.

The Hospital District disputed this claim. It submitted the deposition testimony of Constable Abercia, which contradicted several of the statements made in his affidavit. The Hospital District also submitted the affidavit of Commissioner Lee, in which he (1) denied ever associating with a person named Bill Lee in any capacity, or even knowing such a person, and (2) denied that he authorized anyone to contact Allison on his behalf or to solicit any payments from Allison. Commissioner Lee also averred that the only contact he made with any of the Board of Managers concerning the condemnation was in July 2004, after a meeting with Allison, when he spoke to a Board member to request that the Board consider stopping the condemnation long enough to review Allison's proposals. Deposition testimony of Allison also was relied upon to demonstrate that Allison had no other evidence connecting "Bill Lee" to Commissioner Lee. In addition, the Hospital District argued there was no evidence that, five years after the alleged incident, Commissioner Lee used his influence to induce the Commissioners Court or the Hospital District to take Textac's property.

### e. Textac's Evidence that the Hospital District's Decision to Condemn was Arbitrary and Capricious or an Abuse of Discretion.

Textac also contended that the Hospital District's Board of Managers' determination of public necessity was arbitrary and capricious or an abuse of discretion on two

grounds. First, Textac argued that the Commissioners Court was willfully indifferent to the Board of Managers' statutory independence. Second, it argued that the Board of Managers abdicated its responsibilities to independently determine the public necessity for taking Textac's property. To support these arguments, Textac pointed to a Commissioners Court order directing the Hospital District to stay within the County's guidelines and policies regarding the acquisition of real estate, including using the Harris County Right of Way Division for purchasing property, which Textac contended enabled it to control the condemnation process and the flow of information to the Board of Managers.[12] Textac also pointed to evidence it contended demonstrated a conflict of interest arising from the professional duties the County Attorney's Office owed to the Commissioners Court and the duties it owed to the Hospital District in connection with these actions. Textac further pointed out that, in response to a recommendation by the general manager of the Right of Way Division, the Commissioners Court approved a resolution decreeing that it— not the Hospital District—found that a public necessity and convenience existed for the LBJ Hospital Expansion Project and authorized the purchase or acquisition

---

**12.** To support its contention that the Commissioners Court was willfully indifferent to the Hospital District's independence, Textac included an excerpt from an unofficial transcript of a meeting of the Commissioners Court on December 2, 2003, in which the following exchange took place concerning the Hospital District's acquisition of real estate:

MR. RADACK: Yes, sir, item "7" in reference to the Hospital District acquiring real estate whether through leases or purchase and I received some information that the district has basically felt free to pick up the telephone and call real estate agents when they want to acquire property and Mr. Barnhill [of the County Attorney's Office], I think, is very clear that they should be going through our Right of Way section. Do you agree with that?

MR. BARNHILL: That was our recommendation.

MR. LEE: Well there's a pretty clear practice and a set of standards and procedures that we need to be following. If this new administration doesn't know that, you may need to explain it to them and that's to everybody who is acquiring property not just the Hospital District, but any entity that is drifting off into shopping on the phone.

MR. BARNHILL: Certainly, we'll be happy to convey the court's desire to the Hospital District.

MR. LEE: Yes, well state law requirements say if it's over a $1 million you have some steps that are in your local government code. I surely don't want to encroach on your business.

MR. BARNHILL: We'll be happy to work with the district to make sure that they follow the law. I don't know that there's a law that requires them to use the Right of Way department. If that's the desire of the court you may want to express that clearly to them.

MR. LEE: Well, the procedure is more important than what department it falls in. It gets to Right of Way because logical land handling and usage that's kind of what we've been taught, but they need to be in sync with what we do with Flood Control and other departments of acquiring properties.

MR. BARNHILL; And we agree with that 100%. Our recommendation was that they use the county Right of Way Department for acquisitions even if they're going to . . .

MR. RADACK: I would like to move that the County Attorney's Office inform the District to follow our purchasing policies of real estate and lease of real estate. I make a motion that you inform them that the Commissioners Court is making clear to them to follow the guidelines.

MR. ECKELS: We're requesting that they follow those, I understand that they are a separate entity.

MR. RADACK: I'm not just requesting, they will follow the guideline.

MR. BARNHILL: We'll be happy to do so.

MR. RADACK: I move.

MR. EVERSOLE: Second

MR. ECKELS: Motion made and seconded. All in favor? *(Unanimous Response)* All opposed? *(None)* Motion carries.

by eminent domain of the tracts within the project area on February 3, 2004, well before the Hospital District approved its resolution on April 29, 2004. Textac's evidence also included a transcript of an audiotaped telephone conversation between Les Allison and the Hospital District's Board of Managers Chairperson, in which she commented that Textac's property was being condemned because the commissioners "basically mandated it," and she could not say that it was the Board of Managers' decision.

**f. The Hospital District's Supplemental Motion for Summary Judgment Evidence Showing that the Hospital District Acted Within its Legislative Mandate.**

In its supplemental motion for partial summary judgment, the Hospital District argued that Health and Safety Code sections 281.049 and 281.050 contemplate considerable oversight by the Commissioners Court, and that when the Commissioners Court ordered that the Hospital District stay within the County's guidelines when purchasing property and use the Right of Way Division, it was acting within this legislative scheme. The Hospital District emphasized that section 281.050 requires the approval of the Commissioners Court before the Hospital District is authorized to condemn property.[13] The Hospital District also addressed the evidence that former Hospital District CEO John Guest concealed relevant information from the Board of Managers concerning Allison's proposals for the joint development of Textac's property before the Board first voted to acquire the property in January 2004. It presented evidence that it claims showed that this problem was more than adequately remedied. The Hospital District's evidence, consisting primarily of documents and deposition testimony from Allison, two Hospital District Board of Managers members, and others, demonstrated that Allison informed the Board members of his proposal in February 2004, and it was considered by the Board during meetings on March 8 and March 12, 2004. After considering Allison's proposal, the Board voted at the March 12 meeting to reject it and to proceed with the purchase of Textac's property, by condemnation if necessary. This decision was reaffirmed by the resolution adopted by the Board of Managers on April 29, 2004, in which it decreed that a public necessity and convenience existed for the LBJ Hospital Expansion Project, and authorized the purchase or condemnation of tracts within the project area, including Textac's property.

**g. The Hospital District's Evidence Showing Valid Motives for Condemning the Property and Textac's Alleged True Motive for Suing.**

In addition to all of the other evidence it presented, the Hospital District presented evidence that its expansion plan called for

---

13. In this regard, the Hospital District pointed to other functions it either cannot perform itself or which it can perform only with the approval of Commissioners Court. For example, the Hospital District's budget must be submitted to the Commissioners Court for final approval. TEX. HEALTH & SAFETY CODE § 281.091. At the end of every fiscal year, the Hospital District's administrator must submit a sworn report to the Commissioners Court accounting for all expenditures. *Id.* § 281.092. Commissioners Court has the sole authority to levy and collect taxes to support the Hospital District. *Id.* § 281.096. Only the Commissioners Court has the authority to issue and sell general obligation bonds to fund the Hospital District or to hold a bond election. *Id.* §§ 281.101–.102. The county judge is required to execute all such bonds and Commissioners Court approval is required before the Hospital District may issue certificates of obligation. *Id.* §§ 281.104, 281.106. Finally, the members of the Harris County Hospital District Board of Managers are appointed by the Harris County Commissioners Court. *Id.* § 281.021(c).

the acquisition of about twenty-six acres of land to the west of LBJ Hospital, and only about nine acres of this land was owned by Textac until December, 2003. In a July 31, 2003 meeting of the Board of Managers, the Board authorized the Hospital District to enter into negotiations for the purchase of Textac's property. In deposition testimony, Allison conceded that, after being informed that the Hospital District wanted to negotiate the purchase of his land, he actively sought to acquire all of the twenty-six acres for Textac. In his affidavit, Allison stated that he had begun purchasing property in the area more than fifteen years earlier, and had been in discussions with the Hospital District and the University of Texas over the course of this time period "relating to the development potential for the benefit of all stakeholders."

The Hospital District claims its evidence showed that Allison was more interested in a joint development of the property rather than an outright sale. It claims this raises a fact issue concerning his motivation for refusing to agree to sell to the Hospital District, which ultimately led to the condemnation action and the basis for this lawsuit.

### 3. The Evidence Created a Fact Issue on All of the Issues Presented to the Trial Judge

■■■ The foregoing evidence raises fact issues precluding judgment as a matter of law in Textac's favor. Further, the issues were hotly contested and much of the evidence was in the form of conflicting affidavits and deposition testimony. For example, as discussed above, the evidence concerning whether a bribe was sought on behalf of Commissioner Lee, and whether Allison's refusal to pay the alleged bribe resulted in a retaliatory condemnation action, was the subject of contradictory evidence primarily in the form

of affidavits and deposition testimony. Similarly, what actions the county commissioners, the Hospital District, and others took in advance of the board's resolution to approve the acquisition of Textac's property on April 29, 2004, and whether these actions led to arbitrary and capricious conduct on the part of the Hospital District, was accompanied by voluminous and often contradictory evidence in the form of documents, affidavits, and deposition testimony.

Reviewing the evidence in the light most favorable to the Hospital District, we hold that Textac has failed to demonstrate as a matter of law that the Hospital District's condemnation action was founded in fraud or was arbitrary and capricious. Therefore, the trial court erred in granting Textac's motion to dismiss and in awarding attorney's fees to Textac. We sustain the Hospital District's first three issues.

### Conclusion

Textac has failed to prove as a matter of law that the Hospital District's condemnation action was founded in fraud or was arbitrary and capricious. For this reason, we reverse the trial court's order of dismissal and subsequent judgment, and remand the case for trial in accordance with this opinion.