BOWERS STEEL, INC., Appellant,

v.

Thomas V. DeBROOKE, Appellee.

No. 15852.

Court of Civil Appeals of Texas, San Antonio.

Oct. 19, 1977.

Alfred L. Shepperd, Sawtelle, Goode, Davidson & Troilo, Arthur C. Troilo, Jr., John A. Heller, San Antonio, for appellant.

Craig L. Austin, San Antonio, for appellee.

MURRAY, Justice.

This is an appeal from a judgment entered by the trial court in favor of appellee, Thomas V. DeBrooke, against appellant, Bowers Steel, Inc. Appellee brought suit against appellant, a small "finished-steel" importing and sales corporation, for breach of an oral contract of employment.

The case was submitted to a jury on special issues and the jury found against appellant on every issue, as follows: (1) that appellant corporation agreed to hire appellee as an officer and to compensate him with 20 percent of the stock of the corporation, a salary of $30,000.00 per year, and the use of a company automobile; (2) that the fair market value of 20 percent of the stock of appellant corporation as of the time of appellee's termination with the corporation was $20,000.00; (3) that the market value of 20 percent of the stock of appellant corporation as of the time of appellee's employment was $24,444.00; (4) that appellant corporation had "expressly or impliedly" represented to appellee, subsequent to his employment, that he would be given 20 percent of the stock of the corporation as compensation for his employment; (5) that appellee relied upon the representations of the corporation in continuing his employment with the corporation; (6) that appellant corporation affirmed and ratified the agreement of its president to employ appellee as an officer and to compensate him with 20 percent of the stock, a salary of $30,000.00 a year, and the use of a company automobile; and (7) that appellee did not waive any agreement to receive 20 percent of the stock of appellant corporation by his letter of November 24, 1975. Based upon such answers, the trial court entered judgment for appellee against appellant for $20,000.00 on December 23, 1976. Appellant duly filed its appeal as prescribed by the Rules of Civil Procedure.

There are substantially only three questions presented on this appeal. They are: (1) there is no enforceable contract because it is not definite in its terms, violates the Statute of Frauds, Tex.Bus. & Comm.Code Ann. §§ 8.319 and 26.01 (1968), was merged into a later written instrument, and as a matter of law, appellee waived his cause of action; (2) the market value of the stock at the time of appellee's termination is not the proper measure of damages and not supported by the evidence; and (3) Boyd King was not authorized to promise 20 percent of the stock on behalf of the corporation, and such promise is not supported by the evidence.

In disposing of a "no evidence" point we are required to follow the well established rule to consider only the evidence and inferences tending to support the jury's answer. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965). We are required to review all of the evidence in disposing of a "factually insufficient evidence" point. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The testimony of a party to a suit raises an issue of fact. A court of civil appeals cannot substitute its judgment for that of trier of fact. Ryan v. Morgan Spear Associates, Inc., 546 S.W.2d 678 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n. r. e.).

The jury having answered the issues adversely to appellant's contention, we have no power to set their findings aside if they are based on sufficient evidence. It depends, therefore, upon the evidence introduced in the case as to whether the proof warrants the findings.

Considering the record before us as a whole, we are of the opinion that our decision in this case does not depend on the question whether King was authorized to offer 20 percent of the stock. We agree with appellee's argument that the corporation ratified the agreement of King to pay appellee 20 percent of the stock. The principle is well established that the directors or

stockholders may ratify any act or contract of any other body or agency of the corporations which they might have authorized in the first instance. *Rogers-Hill & Co. v. San Antonio Hotel Co.*, 23 S.W.2d 329 (Tex. Comm'n App.1930, jdgmt. adopted).

The stock of the appellant has always been owned by its officers and directors, with Mr. Robert L. Bowers being the largest stockholder.

In April of 1973, Mr. Bowers was president of appellant. Bowers entered into a contract with Boyd King whereby King was to become president of the corporation. King was to receive 18 percent of the corporation's stock, a salary of $35,000.00 a year, and the use and expenses of an automobile. King became president of the corporation and served in that capacity until December 1974. At the time of his termination, King's stock was repurchased for $22,000.00.

In January or February of 1974, King approached the appellee about working for a three-month period for the corporation as a consultant. The relationship went well and King and DeBrooke began conversing about hiring DeBrooke permanently as vice president. King informed DeBrooke of the circumstances under which he, King, had been hired, making it clear to DeBrooke that King had received a salary of $35,000.00 and corporate stock.

Appellee accepted an offer by the then president of appellant corporation, Mr. Boyd King, to begin work with the corporation on June 15, 1974 based upon certain oral representations made by Mr. King. The employment of the appellee as vice president of the corporation was later ratified and confirmed by the Board of Directors on July 19, 1974, which ratification is documented in the minutes of the Board of Directors which were signed by appellee. The minutes prescribed the terms of appellee's contract of employment to be a salary of $2,500.00 per month and the use of a company automobile. There is reference in the minutes to a recommendation by the Board of Directors that:

. . . [S]ome plan be established whereby Mr. DeBrooke would be entitled to acquire an equity participation in the corporation. The Board requested that the President, in conjunction with the corporation's attorneys and accountants, develop such a plan and present such a plan at a future Board Meeting.

Subsequently, both the attorney and the certified public accountant for the corporation made written propositions whereby DeBrooke was to acquire 20 percent of the corporate stock.

In December of 1974, King left the corporation and Bowers once again became president. DeBrooke was terminated as vice president of the corporation on November 24, 1975. At that time, DeBrooke demanded that he receive the 20 percent of the corporate stock to which he was entitled.

Appellee worked for the appellant from July 1, 1974 until November 24, 1975. During part of this time, from July 1975 to November 1975, the only stockholders were King and Bowers.

Appellee testified that during this time he had many meetings with Bowers and was assured by Bowers that he had nothing to worry about, that his stock would be forthcoming, and that Bowers would make it happen. Appellee testified that King told him that if he went to work for appellant he would receive 20 percent of the stock.

■ While it is no doubt true that the general powers of the president of a corporation would not ordinarily include the right to offer 20 percent of the stock of the corporation as an inducement for someone to enter into an employment contract, it does not follow that such right could not be conferred upon him by the directors or stockholders. *Ennis Business Forms, Inc. v. Todd*, 523 S.W.2d 83 (Tex.Civ.App.—Waco 1975, no writ); *Nelms v. A&A Liquor Stores, Inc.*, 445 S.W.2d 256 (Tex.Civ.App.—Eastland 1969, writ ref'd n. r. e.).

■ The evidence in this case is voluminous, and no useful purpose could be subserved by quoting it to any great extent.

We hold that there is evidence from which the jury would be authorized to find that King offered appellee 20 percent of the stock, that the corporation's directors and stockholders knew of the promise, and that the corporation acquiesced therein and did nothing to repudiate the promise until it decided to terminate appellee. *Almar-York Co. v. Fort Worth National Bank*, 374 S.W.2d 940 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.).

■ Appellant contends that the promise of 20 percent of the stock was merged with the subsequent written minutes of the Board of Directors quoted above. We disagree. The general rule is that when parties have concluded a valid integrated agreement with respect to a particular subject matter, the enforcement of inconsistent, prior, or contemporaneous agreements is precluded. On the other hand, the rule does not preclude enforcement of prior agreements which are collateral to an integrated agreement and which are not inconsistent with and do not vary or contradict the express or implied terms or obligations thereof. *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30 (1958). The recommendation of the Board of Directors to the attorneys and accountants to develop a plan whereby appellee would acquire an equity in the corporation is not inconsistent with the prior oral promise and is in fact a proper and normal way to carry out such oral promise.

In Special Issue No. 2 the jury found that the fair market value of 20 percent of the stock of Bowers Steel, Inc., as of the time of appellee's termination, is $20,000.00.

Bowers Steel, Inc. is a closed corporation; its stock is not listed on the exchange and there is no public market existing. The best evidence of established value of the stock are four arms-length stock transactions entered into between the corporate principals. Stock purchases ranged from $22,000.00 for 18 percent in December 1974, to $30,000.00 for 25 percent in December 1975; averaging $1,500.00 for one percent of stock. The jury awarded appellee $1,000.00 for one percent of the stock which is beneath the average of the four transactions.

In *Braman v. Central Hanover Bank & Trust Co.*, 138 N.J.Eq. 165, 47 A.2d 10 (Ct. Ch.N.J.1946), suit was instituted by a beneficiary of a testamentary trust challenging a sale of stock by the trustee, alleging the sales price was inadequate and unconscionable. The stock of this corporation was very closely held. It was not listed on the stock exchange, and it had no public market. The court held that "The test of market value" of closed corporation common stock, not listed on exchange and having no public market, "is what a willing purchaser" thereof "would pay to a willing seller who was not acting under compulsion."

*See also Fielding v. Allen*, 99 F.Supp. 137 (D.N.Y.1951); *Crockett v. Smith*, 485 S.W.2d 321 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.)

■ Where corporate stock has no established market value, evidence of the book value of the stock is relevant, although entitled to little weight, and far from conclusive. *Bendalin v. Delgado*, 406 S.W.2d 897 (Tex.1966); *Barsan v. Pioneer Savings & Loan Co.*, 163 Ohio St. 424, 127 N.E.2d 614 (1955).

■ The proper measure of damages is the fair market value of the stock as of the time of appellee's termination, and from all the evidence considered there is sufficient evidence to support the jury's findings.

The appellant relies on the provisions of § 8.319 of the Tex.Bus. & Comm.Code Ann., entitled "Statute of Frauds." In pertinent part, this section of the Code states:

A contract for the sale of securities is not enforceable by way of action or defense unless

(1) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(2) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; . . .

The courts of Texas have not yet considered the question of whether or not an oral contract of employment for which the consideration is to be corporate stock is prohibited by § 8.319.

██ It is noted that appellant treats the oral contract as requiring future payment by appellee for the stock, while appellee claims that he is entitled to the stock as consideration for this accepting employment with appellant. This question was determined by the jury adversely to appellant and, therefore, we hold that the prohibition of § 8.319 does not apply. By the terms of § 8.319(2), the prohibition does not apply where payment has been made. *Baldassarre v. Singer*, 444 Pa. 100, 282 A.2d 262 (1971).

In *Baldassarre, supra*, the court stated at page 264:

> By its own terms, § 8–319 only applies to 'a contract for the sale of securities.' We are not convinced that this section is applicable to the transaction in question. Although 'sale of securities' is nowhere defined, § 2–106 defines 'sale' as: 'A "sale" consists in the passing of title from the seller to the buyer for a price.' There is no 'price' for stock transferred pursuant to an employment contract. The only consideration is the employment itself. If appellants are correct that an employment contract is a sale for purposes of § 8–319, the Uniform Commercial Code's statute of frauds on securities, then the two chemists, by leaving their previous employment and working for Rare Metals, have made 'payment' for the stock, and thus are entitled to enforce their oral contract under the terms of § 8–319(b). However, we do not believe that such an awkward use of language is necessary. We believe it much more reasonable to state that the contract in question is simply not a contract of sale.

Appellant cites the following cases as authority for the proposition that an oral employment contract dealing with the transfer of stock is within the terms of § 8.319 and is therefore unenforceable. *Mildfelt v. Lair*, 221 Kan. 557, 561 P.2d 805 (1977); *Scarpinato v. National Patent Development Corp.*, 75 Misc.2d 94, 347 N.Y.2d 623 (Sup.Ct.1973); *Crockett v. Smith, supra; Quinn v. Beverages of West Virginia, Inc.*, 224 S.E.2d 894 (W.Va.1976).

In each of the above cases the oral promise was an option to purchase in the future for a price. It is interesting to note that in *Quinn, supra*, there was an oral promise of 4,688 shares promised and an option to sell additional shares for a price in the future. The court held that only the option to sell additional shares in the future was prohibited by § 8.319.

All other points raised by appellant have been considered by the Court and are overruled.

The judgment of the trial court is affirmed.