NO. 12-10-00122-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

LAIRD HILL SALT WATER
DISPOSAL,    §                   APPEAL FROM THE 

LTD. AND BOLTSERV., INC.,

APPELLANT            S

 

V.                                                                      
§                   COUNTY COURT AT LAW #2

 

EAST TEXAS SALT WATER

DISPOSAL, INC.,

APPELLEE                                                     
§                   GREGG COUNTY, TEXAS 







OPINION

            This
is an appeal in a condemnation case.  The trial court granted a partial summary
judgment determining that East Texas Salt Water Disposal, Inc. (ETSWD), had the
authority to condemn the two acres on which the Bass #5 salt water disposal
well (Bass #5) owned by Laird Hill Salt Water Disposal, Ltd. and Boltserv, Inc.
(Laird Hill)[1]
was located.  The issues of compensation and trespass were then tried to a
jury, who determined that there had been no trespass by ETSWD and awarded Laird
Hill $24,700.00 for the Bass #5.  In its first issue, Laird Hill appeals the
trial court’s partial summary judgment.  In its second issue, which we need not
address if we sustain the first, Laird Hill attacks the admission of evidence
and the charge in the jury trial.  We affirm.

 

Background

East Texas
Oil Field

            The Woodbine
Formation, also known as the East Texas Oil Field (Field), is the largest and
most prolific oil reserve produced in the contiguous United States.  The Field is
approximately forty miles long and between five to seven miles wide.  Since its
discovery in 1930, the Field’s primary oil recovery source consists of a strong
“water drive,” whereby salt water in the formation creates pressure to move oil
from the reservoir to the wellbore and ultimately to the surface.  To produce a
barrel of oil from the Field, ninety-two barrels of salt water must be
extracted.

            By
the late 1930s, a crisis had developed in the Field because there was nowhere
to store the large amount of salt water being brought to the surface, and it
had begun to seep into the area’s fresh water supply.  In 1942, ETSWD was
established to dispose of the salt water in disposal wells specifically drilled
and constructed to safely store this water and keep it from polluting the
area’s fresh water supply.  Since its founding, ETSWD has provided this service
to the producers in the Field on a cost basis.  It has constructed over 700
miles of pipeline throughout the Field to transport salt water to its disposal
wells in an efficient and environmentally sound manner for disposal.  Dozens of
disposal wells have been drilled over the decades to dispose of the millions of
gallons of salt water produced daily in the Field.

Bass #5

            In
1985, ETSWD leased the approximately two acre tract that is the subject of this
suit from Jimmy Mankins and his wife, Virginia, for ten years for the purpose
of operating a salt water disposal well.  ETSWD exercised an option to extend
the lease for an additional five year term in 1995, and the parties thereafter
amended the lease to provide for an additional five year term to expire on June
4, 2005.  Near the expiration of the lease in 2005, Glenn Phillips, the
attorney for the Mankinses, informed ETSWD through its land manager, Hollis
Wood, that they had an offer of $70,000.00 for the two acres.  When ETSWD
balked at paying this amount for the two acres, Phillips sent the following
letter, which in pertinent part read as follows:

 

                This letter will confirm that Mr. and
Mrs. Mankins have agreed to extend the termination date of the above-described
lease until June 30, 2005, conditioned upon East Texas Salt Water Disposal
Company paying rental for that period in the amount of $100.00.  During this
time we are going to have Mr. Lawler give us some idea of the value of that
property and I will contact you after I hear from Mr. Lawler.

 

 

            There
was a dispute between the testimonies of Phillips and Wood over whether any
negotiations continued between the parties following this communication.  Wood
testified that he never heard from Phillips again about a purchase price for
the two acres.  Phillips testified that he and Wood negotiated during July and
August 2005 and that ETSWD’s top offer was $10,000.00, which the Mankinses
considered inadequate.  ETSWD continued to operate the Bass #5 from July
through November and paid $100.00 each month to the Mankinses.  

            On
November 23, 2005, the Mankinses sold the two acres to Laird Hill for
$48,000.00.  Laird Hill is an ETSWD competitor in the salt water disposal
industry. The two companies’ competitive positions in disposing of salt water
were as follows:

 

                                                ETSWD                                 Laird
Hill

Charged price per                barrel of                4.6¢                                        $1.30
– $1.70

salt water disposed

 

Barrels of salt water                            980,000–1,000,000            3,700–5,500

disposed of daily                                                                 

 

Number of salt water                          88                                           1

disposal wells operated

 

Method of transporting                      Pipeline                                  Trucks

salt water to disposal well                  (700
miles)                            (130 barrels per truckload)

 

Formations served                               Woodbine                             Cotton
Valley, Travis Peak,

                                                                (solely)                                   Haynesville
Shale

                                                                                                                (primarily)

                                                                                                                

 

On
December 6, 2005, Kevin Key, general manager for Laird Hill, along with
Phillips, met with Jim Schneider, field superintendent for ETSWD, regarding the
operation of the Bass #5 under Laird Hill’s ownership.  The testimony of
Schneider, Key, and Phillips conflicted as to what happened at this meeting,
but on December 14, 2005, Key sent a letter to Schneider, which in pertinent
part stated the following:

 

                As we indicated in the meeting, we
would like to work an arrangement that is mutually beneficial for Laird Hill
and East Texas Salt Water, but if that is not possible we intend to proceed
with our plans to expand the facility early next year.  Laird Hill understands
that your firm will need some time to disconnect this well from your
operations, but we need to know your target date for the disconnect.  We will
work with you on this issue to the greatest extent possible.

 

 

            No
communication occurred between Key and Schneider for three weeks following the
December 14, 2005 correspondence.  Then, on January 4, 2006, Key sent a letter
to Schneider, which included the following:

 

                We are in the process of placing a
fence around our two acre tract upon which the Bass well bore is located. 

 

. . .

                Please consider this letter as formal
notice that Laird Hill Salt Water is erecting a gate at the entry to the two
acre tract.  No one, including East Texas Salt Water, has authority to enter
upon the two acre tract without contacting me in advance.

 

 

Condemnation
Proceedings

            One
week after Key’s letter, ETSWD filed its petition to condemn the two acres. Special
commissioners, in the standard administrative proceeding for condemnation
proceedings, entered an award of $22,000.00 to Laird Hill for the two acres.  Laird
Hill immediately filed a written objection stating that the award was
inadequate.  This objection converted the administrative proceeding into a
cause before the trial court.[2] 
Nearly four years later, in February 2010, both parties filed motions for
partial summary judgment.  The trial court signed an order on these two motions. 
The following portions of the order are pertinent to this appeal. 

 

(1)           ETSWD’s condemnation is proper;

 

(2)           ETSWD is a well waste water corporation
with the power of eminent domain;

 

(3)           ETSWD made a determination that the
condemnation was necessary to serve a public     use;

 

(4)           ETSWD’s activity serves a public use;

 

(5)           ETSWD’s determination of necessity and
public use was not made in an arbitrary, capricious, bad faith, or fraudulent
way;

 

(6)           ETSWD does not discriminate;

 

(7)           ETSWD has the right for six months after
the end of the final termination of the lease to remove or plug any saltwater
disposal wells;

 

(8)           Laird Hill’s request for declaratory relief
as to paramount importance or purpose fails and               is denied;

 

(9)           Laird Hill is not entitled to lost
profits as damages under condemnation; and

 

(10)         Laird Hill is not entitled under
condemnation to the value of the improvements made on                 the
Property by ETSWD.

 

 

            A
jury then heard evidence on whether ETSWD had trespassed on Laird Hill’s two
acres and on the value of the two acres.  The jury determined that no trespass
had occurred and the two acres condemned was worth $24,700.00.  This appeal
followed. 

 

Summary Judgment

In
its first issue, Laird Hill contends that the trial court erred in its order
granting summary judgment, challenging the above ten statements in its order
granting ETSWD’s motion for partial summary judgment.

Standard
of Review

            We review
the trial court’s summary judgment de novo.  Valence Oper. Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005).  Here, each of the parties moved for a
traditional partial summary judgment.  See Tex. R. Civ. P. 166(a)(c).  The standards for reviewing a traditional
summary judgment are well established:  (1) the movant must demonstrate that
there is no genuine issue of material fact and that it is entitled to judgment
as a matter of law; (2) in deciding whether a disputed issue of material fact
exists that would preclude summary judgment, we take all evidence favorable to
the nonmovant as true; and (3) we indulge every reasonable inference and
resolve any doubts in favor of the nonmovant.  Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548-49 (Tex. 1985).  When, as here, both sides
move for a traditional summary judgment and the trial court grants part of one
motion and denies the other, the reviewing court should review the summary
judgment evidence presented by both sides and determine all questions presented
and render the judgment that the trial court should have rendered.  See Comm’rs
Court of Titus Cnty. v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).  The court
can consider one party’s evidence in support of the other party’s motion.  Tex.
Dep’t of Pub. Safety v. Abbott, 310 S.W.3d 670, 673 (Tex. App.–Austin
2010, no pet.) (citing  DeBord v. Muller, 446 S.W.2d 299, 301
(Tex. 1969)).

ETSWD’s
Authority to Condemn

            In
its first specific attack on the court’s summary judgment, Laird Hill contends
that ETSWD did not properly authorize the condemnation.  The issue of a
condemnor’s authority to condemn is a legal question.  Harris Cnty. Hosp.
Dist. v. Textac Partners I, 257 S.W.3d 303, 316 (Tex. App–Houston [14th
Dist.] 2008, no pet.).  The Texas Constitution states when a citizen’s property
can be condemned.

 

Sec. 17. (a) No person’s property shall be taken,
damaged, or destroyed for or applied to public use without adequate
compensation being made, unless by the consent of such person, and only if the
taking, damage, or destruction is for:

 

     (1) the ownership, use, and enjoyment of the
property, notwithstanding an incidental use, by:

                

     . . . . 

 

          (B) an entity granted the power
of eminent domain under law. . . . 

     . . . .

 

(d) When a person’s property is taken under Subsection
(a) of this section, except for the use of the State, compensation as described
by Subsection (a) shall be first made, or secured by a deposit of money; and no
irrevocable or uncontrollable grant of special privileges or immunities shall
be made; but all privileges and franchises granted by the Legislature, or
created under its authority, shall be subject to the control thereof.

 

Tex. Const. art. I § 17.  “A well waste
water corporation may be created to gather, store, and impound well wastewater and
to prevent the flow of well wastewater into a stream when the stream may be
used for irrigation.”  Tex. Nat. Res.
Code Ann. § 111.402 (Vernon 2011).  “‘Well wastewater’ means water
containing salt or other substances produced during drilling or operating oil
and other types of wells.”  Id. § 111.401.  “A well wastewater
corporation may condemn land or a property right necessary for a purpose of the
corporation.”  Id. § 111.404(a).  The summary judgment evidence
established that ETSWD was a well wastewater corporation established in 1942. 
It therefore had the power to condemn the two acres upon which Bass #5 was
located.  

Laird
Hill contends that ETSWD’s governing body failed to properly authorize the
condemnation.  The power of eminent domain is granted only to the condemnor’s
governing body.  See FKM P’ship v. Bd. of Regents, 255
S.W.3d 619, 630 (Tex. 2008).  A condemning authority can “act only through its
governing body and cannot delegate its eminent domain power, and must manifest
its official actions through orders, resolutions, and minutes.”  Whittington
v. City of Austin, 174 S.W.3d 889, 901 (Tex. App.–Austin 2005, pet.
denied) (internal citations omitted).  Normally, a resolution of the board of
directors is the proper method for determining and declaring the public
necessity that must exist to go forward with a condemnation.  See id.
at 903.  

However,
evidence of other “affirmative acts” may permit the condemnor to establish that
they have made a necessity determination.  See id. at 904
(citing Maberry v. Pedernales Elec. Coop., 493 S.W.2d 268, 270-71
(Tex. Civ. App.–Austin 1973, writ ref’d n.r.e.) (stating “the resolution or other
action by the condemnor declaring a necessity for the taking[ ] must be
introduced into evidence.”)).  In Texas, a governing body of a corporation may
delegate many of its responsibilities to committees composed of board of
directors members.  See Tex. Bus.
Org. Code Ann. § 21.416(a) (Vernon Supp. 2010).[3] 
The board of directors’ power to delegate responsibilities is limited only by
the corporation’s certificate of formation, its bylaws, and certain enumerated
statutory prohibitions not applicable here. See id. § 21.416(b). 
The power of eminent domain is not one of the prohibited functions listed in the
Texas Business Organizations Code for delegation by the directors to a
committee.  See id. § 21.416(c).  We see no reason why these
ordinary corporate rules and norms of corporate governance should apply with
less force in the condemnation context.  See Maberry, 493 S.W.2d
at 271 (The condemnor has the “burden to show that a determination of
convenience and necessity to serve the public has been made by the governing
body, the board of directors, or other authority having power to speak and
act for the condemnor.”) (emphasis added).

            In
the instant case, Clements, acting in his capacity as ETSWD’s president,
originally decided that it was necessary to condemn the two acre tract.  We
agree with Laird Hill that Clements in his position as president of ETSWD had
no express or inherent authority to authorize the condemnation proceedings.  See
Templeton v. Nocona Hills Owner’s Ass’n, 555 S.W.2d 534, 538
(Tex. Civ. App.–Texarkana 1977, no pet.).  However, our analysis does not end
there.  

ETSWD
included its corporate bylaws as part of its summary judgment evidence. 
Section 3.15 of the bylaws stated specifically that the board of directors
could designate an executive committee.  The same section of its bylaws tracked
what is now Section 21.416(c) of the Texas Business Organizations Code in
designating what the executive committee would not have the authority to do. 
Again, the power of eminent domain is not listed in ETSWD’s bylaws as a power
the executive committee is proscribed from exercising.

            The
summary judgment evidence also includes the minutes of the meeting of the board
of directors of ETSWD held April 27, 2005.  At this meeting, all eight of the
members of the ETSWD board of directors were present.  An executive committee
of four of the eight members was unanimously approved at this board of
directors meeting.  The following ETSWD resolution was also part of the summary
judgment evidence before the trial court:

 

RESOLUTION OF THE BOARD OF DIRECTORS

 

EAST TEXAS SALT WATER DISPOSAL COMPANY

 

On this 11th day of April, 2006, the
Executive Committee of East Texas Salt Water Disposal Company, read, approved,
and adopted the following Resolution:

 

                “BE IT RESOLVED, that East Texas Salt
Water Disposal Company requires, as a part of its business purposes and the
public benefit, a certain 1.19 acre tract of land, more or less, together with
a roadway and pipeline right-of-way across the Laird Hill Salt Waste Disposal
2.00 – acre tract of land situated in the W.P. Chism Survey, Abstract #36,
Gregg County, Texas, for the purpose of installing, maintaining, and operating
wells, pipelines, and other equipment necessary to the disposal of salt water. 
The Executive Committee has previously directed and authorized the President of
the Company to determine the appropriate alternatives at, on and about the
above referenced tract, and it is the considered judgment of this Company that
the above described tract and right-of-way are required in the business purpose
of the Company, and the President is hereby directed to proceed with the formal
condemnation procedures.”

 

                The above constitutes a true and exact
copy of the Resolution adopted and passed by the Executive Committee of East
Texas Salt Water Disposal Company.

 

 

                                                                                 /s/
Carter Matthews

                                                                                Carter
Matthews:  Secretary/Treasurer

 

 

Laird
Hill complains of this resolution’s timing. Since it was not executed until a
few months after the condemnation proceedings were filed, Laird Hill argues
that it is not an effective resolution.  It is not necessary for a governing
board of a condemnor to have authorized the condemnation prior to the
condemnation petition having been filed.  Lin v. Hous. Cmty. Coll. Sys.,
948 S.W. 2d 328, 334-35 (Tex. App.–Amarillo 1997, writ denied);[4]
see also Swain v. Wiley Coll., 74 S.W.3d 143, 150
(Tex. App.–Texarkana 2002, no pet.) (“The venerable rule is that the
ratification by the principal of its agent’s act relates back to the time of
the act.”).  

Laird
Hill next contends that this resolution describes action taken by ETSWD’s
executive committee, rather than its board of directors.  However, on its face,
the resolution states that it is a “Resolution of the Board of Directors” of ETSWD. 
The bylaws of ETSWD allowed the board of directors to delegate to the executive
committee various powers that were not specifically proscribed.  The power of
eminent domain was not one of those powers proscribed.  The resolution of ETSWD
is not void on its face, although it only describes a meeting of the executive
committee, rather than the full board of directors.  Any of the four directors
who was not a member of the executive committee had standing to void the action
of the executive committee.  See Swain, 74 S.W.3d at 148.  (“An
irregular resolution is not void, but simply voidable.”).  There being no challenge
by any board member in the summary judgment evidence, the full board of
directors impliedly approved of its resolution regarding the necessity to
condemn the two acres.  See Bowers Steel, Inc. v. DeBrooke, 557
S.W.2d 369, 371-72 (Tex. Civ. App.—San Antonio 1977, no writ) (“The principle
is well established that the directors . . . may ratify any act or contract of
any other body or agency of the corporation [such as its executive committee]
which they might have authorized in the first instance.”); see also Petroleum
Anchor Equip., Inc. v. Tyra, 410 S.W.2d 238, 245 (Tex. App.—Dallas
1966) (stating directors may ratify unauthorized acts of its agents without any
formal action by passive acquiescence as well as by affirmative action), rev’d
on other grounds, 419 S.W.2d 829, 834 (Tex. 1967) (ratification not allowed
to be asserted as a defense because not properly pleaded).  Thus, even absent
express authorization in the executive committee, this resolution, and the
implied ratification of it by the board of directors, constitutes an
affirmative act by ETSWD that established the necessity to condemn the two acre
tract.  The summary judgment record is thus sufficient to support the trial
court’s determination that Clements’s action in instituting the condemnation
proceeding was ratified by ETSWD’s governing board. 

            Finally,
in Swain, the court stated that the rule that ratification
relates back to the original unauthorized act “is operative between the parties
to the transaction, but it cannot be applied to defeat the rights of strangers
to the transaction acquired in the intervening period between the original act
by the agent or officer and the ratification.”  Swain, 74 S.W.3d
at 150.  In other words, the rights of third parties “trump” the attempted
ratification in the following sequence of events: (1) the unauthorized act
occurs, (2) a third party obtains rights in the subject of the suit, such as
real estate, and (3) ratification occurs.  Here, however, there is a different
sequence of events: (1) Laird Hill acquired the two acre tract, (2) Clements
made the unauthorized determination of necessity to condemn, (3) ETSWD’s board
of directors issued its resolution through its executive committee wherein it
expressly authorized the condemnation of the two acre tract; and (4) ETSWD’s board
impliedly ratified the resolution by its acquiescence.  Therefore, Laird Hill’s
rights in the tract do not defeat ETSWD’s ratification of its agents’ actions
in exercising its power of eminent domain. 

Public Use

            Laird
Hill contends that ETSWD failed to establish that its taking of the two acres
was for a public use.  What is a public use is a question of law.  Circle
X Land v. Mumford Ind. Sch., 325 S.W.3d 859, 863 (Tex. App.–Houston [14th
Dist.] 2010, pet. denied).  When the legislature delegates to an entity the
power to condemn and the entity condemns the property for public use, the
extent to which the property is taken is a legislative question.  Id.
at 864.  The legislative declaration that the use is presumptively public is
binding on courts unless the use is “clearly and palpably” private.  See id.
(citing Hous. Auth. v. Higgenbotham, 135 Tex. 158, 143 S.W.2d 79,
83 (1940)).  The condemnor’s exercise of discretion may be subject to judicial
review, but only where there is a showing that the condemnor acted
fraudulently, in bad faith, or arbitrarily and capriciously.  Block House
Mun. Util. v. City of Leander, 291 S.W.3d 537, 541 (Tex. App.–Austin
2009, no pet.).

            Laird
Hill, not surprisingly, agrees that salt water disposal is a public use. 
However, it contends that under the doctrine of paramount importance, ETSWD’s
condemnation of the two acres is inappropriate.  That doctrine provides that if
the condemnee can show that the condemnation would practically destroy the existing
use, the condemnor must show that the necessity is so great as to make the new
enterprise of paramount importance to the public that cannot be practically
accomplished in any other way.  Canyon Reg’l Water Auth. v.
Guadalupe-Blanco River Auth., 258 S.W.3d 613, 617 (Tex. 2008) (citing Sabine
& E. Tex. Ry. Co. v. Gulf & Inter. Ry. Co. of Tex., 92 Tex.
162, 46 S.W. 784, 786-87 (1898)).  Laird Hill contends that as the owner of the
two acres, it had the existing public use of salt water disposal and that ETSWD
had the burden of establishing that its use was of paramount importance to the
public.  We disagree with Laird Hill that it would be considered the primary or
first user under the doctrine of paramount importance.  The first occupier of
the ground is entitled to all of the advantages derived from the establishment
of the public use therein.  Sabine & E. Tex. Ry. Co., 46 S.W.
at 787.  Here, ETSWD had occupied the two acres as a lessee since 1985.  It had
constructed the Bass #5 and was therefore the first occupier of the ground with
the public use of salt water disposal.  Laird Hill would be the party in this
suit with the burden to establish paramount importance.  It has failed to meet
that burden.

Condemnation
for a Legislatively Declared Purpose

Laird
Hill also contends that ETSWD has not sought to condemn the two acres for a
legislatively declared purpose.  It makes this argument based upon the following
statute describing service to well wastewater producers:

 

§ 111.405.  Service to Well Wastewater Producers

 

   (a) A well wastewater corporation shall serve all
well wastewater producers in the area in which the corporation operates to the
extent the corporation has adequate facilities to gather, impound, and store
well wastewater.

 

  (b) A well wastewater corporation:

 

                (1) shall serve a well wastewater
producer in proportion to the needs of all of the producers in the area;

 

                (2) shall charge a fair and reasonable
fee for its services; and

 

                (3) may not discriminate between
different producers under similar conditions.

 

 

Tex. Nat. Res. Code Ann. § 11.405
(Vernon 2011).  Laird Hill contends that it provides salt water disposal to all
producers in all formations in East Texas while ETSWD provides this service only
to producers in the Woodbine Formation.  It contends that this is
discrimination.  See id. § 111.405(b)(3).  We disagree.  Laird
Hill ignores section (a) in making this argument.  Id. §
111.405(a).  A well wastewater corporation is only required to serve all
wastewater producers in the area in which the corporation operates.  Id.
 ETSWD has operated its pipeline only in the Woodbine Formation, which is a
geographically delineated area.  The record before us does not indicate that it
has ever operated outside the Woodbine Formation.  Therefore, Section 111.405(b)(3)
only applies to ETSWD with regard to producers in the Woodbine Formation. 
There is no evidence in the record before us that ETSWD has ever denied salt
water disposal services to any producer in the Woodbine Formation.  Therefore, Laird
Hill’s discrimination argument fails.  

ETSWD’s Actions
as Fraudulent, Bad Faith, or Arbitrary and Capricious

            In
attacking ETSWD’s authority to condemn the two acres for a public use, Laird
Hill argues that ETSWD acted fraudulently, in bad faith, or arbitrarily and
capriciously in condemning the two acre tract.  As we have previously stated, a
condemnor’s authority to condemn is a legal question.  See Harris
Cnty. Hosp. Dist., 257 S.W.3d at 316.  In the
condemnation context, fraud means “any act, omission or concealment, which
involved a breach of legal duty, trust or confidence, justly reposed and is
injurious to another, or by which an undue and unconscientious advantage is
taken of another.”  Malcomson Rd. Util. Dist. v. Newsom, 171
S.W.3d 257, 269 (Tex. App.–Houston [1st Dist.] 2005, pet. denied) (op. on
reh’g).  In the same context, arbitrary and capricious, like abuse of
discretion, means “willful and unreasoning acting, action without consideration
and in disregard of the facts and circumstances.”  Id.  Bad faith
in the condemnation context has been suggested to occur when the condemnor deliberately
disregards a condemnee’s rights.  See Westgate, Ltd. v. State,
843 S.W.2d 448, 461 (Tex. 1992) (Doggett, J., dissenting).

            In
its first of five contentions in this section, Laird Hill contends that ETSWD
made the following false statements under oath in its condemnation petition,
amounting to fraud or bad faith:

 

·        
All of the wellbore and equipment
for the operation of the [Bass #5] Well belongs to ETSWD.

·        
ETSWD is not a trespasser and it
is entitled to maintain the status quo as the last peaceable possessor of the
Lease Land upon which the [Bass #5] Well is located and operated. . . .

·        
ETSWD has tendered to the registry
of the Court the agreed upon sums of $100 per month for the months of December
2005 and January 2006 to extend the terms of the Lease.

 

ETSWD’s
contention that it owned the wellbore and the equipment for the operation of
the Bass #5 was legally accurate.  Generally, the owner of the fee simple title
to the land owns any improvements that are placed upon it.  However, there is
an important exception to this rule.  Where one with the right of condemnation affixes
improvements to the real property, the owner is not entitled to compensation
for the improvements.  Nagel v. Tex. Pipeline Co., 336 S.W.2d
265, 266-67 (Tex. Civ. App.–Waco 1960, no pet.).  The landowner, upon
subsequent condemnation, is only entitled to compensation for his land,
together with the reasonable rental value of the land for the period such
improvements were thereon without benefit of the condemnation.  Id.
(citing City of San Antonio v. Grandjean, 91 Tex. 430, 41 S.W.
477, 479 (1897); Preston v. Sabine & E. Tex. Ry. Co., 70 Tex.
375, 7 S.W. 825, 826 (1888)).  Our supreme court has explained the reason for
this longstanding exception.  “Whatever may be the theory as to the foundation
of the right of eminent domain, everyone holds his property subject to that
right.”  Grandjean, 41 S.W. at 478.  “A setting apart or
dedication to a public use, to be effectual, need not be by deed; nor need it
be evidence by the use of having been continued for any particular time.”  Id.
at 479.  

 

[Since] [t]he state has inherent and paramount right
to the property when needed for public purposes, the determination by the
proper authority that the necessity for the taking exists and the taking, and
the adjustment with the owner of the question of compensation, however
effected, complete the appropriation, and devote the property to the public
use.  

 

 

Id.  When
it placed the Bass #5 on the two acres in 1985, ETSWD, for all practical
purposes, owned the wellbore and equipment even though the Mankinses held fee
simple title to the land.  This public use of the property continued even after
Laird Hill purchased the real property from the Mankinses.  When Laird Hill purchased
the real property, it did so subject to the condemnation authority that ETSWD
had received from the State of Texas.  See Nagel, 336 S.W.2d at
266-67.

In
a related argument, Laird Hill contends that the trial court erred when it
denied its ground for summary judgment that the “statute of frauds bars ETSWD’s
claim of ownership to the wellbore.”  Laird Hill argues that ETSWD’s written
lease merely granted ETSWD the right to “use” the two acre tract, and there was
no conveyance of ownership to the land or “any permanent alteration to the land
such as the wellbore to ETSWD.”  And, Laird Hill’s argument continues, even if
such a document existed, it was not in writing or signed by the party to be
charged.  See Tex. Bus. &
Com. Code Ann. § 26.01 (Vernon 2009); Tex.
Prop. Code Ann. § 5.021 (Vernon 2004).  However, as we have already
seen, a condemnor such as ETSWD who entered the land and made improvements owns
the improvements for all practical purposes.  See Nagel, 336
S.W.2d at 266-67.  Thus, the Bass #5 and its appurtenances are owned by ETSWD,
and the trial court properly overruled Laird Hill’s statute of frauds argument.


            As
to the next alleged false statement made by ETSWD, Laird Hill contends that
there was a fact issue concerning whether ETSWD was a trespasser on the two
acres between the time the property had been purchased from the Mankinses and
when ETSWD filed its petition for condemnation.  The trial court did not rule on
this issue in its partial summary judgment  and did in fact, at the request of Laird
Hill, allow it to be submitted as a special issue to be determined by the
jury.  The jury determined that ETSWD had not trespassed on the real property
and that finding, which Laird Hill has not appealed, is binding on it.

            With
regard to ETSWD’s condemnation petition stating that the lease payments for
December 2005 and January 2006 had been agreed upon, there is nothing in the
record to indicate that this statement was fraudulent, in bad faith, or
arbitrary and capricious.  The affidavits of Schneider and Wood that were part
of the summary judgment evidence indicated their good faith belief that Key in
the December 6 meeting had agreed to continue the lease on a month to month
basis as it had been with the Mankinses until something could be worked out. 
We construe pleadings liberally.  See Tex. Dep’t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  We can find
nothing in the allegation with regard to ETSWD’s pleadings as alleged by Laird
Hill that it was filed fraudulently, in bad faith, or arbitrarily and
capriciously.

            In Laird
Hill’s second allegation under this section, it states that there was a
statutory prerequisite requiring ETSWD, before it filed its condemnation
petition, to make an offer to pay Laird Hill for the taking of the two acres.  See
Tex. Prop. Code Ann. § 21.012(b)(4)
(Vernon Supp. 2010).  Our supreme court has said that this “unable to agree”
requirement requires minimal evidence.  See Hubenak, 141
S.W.3d at 185.  Here, there was extensive evidence that when the written lease
between the Mankinses and ETSWD was drawing to a close, there were negotiations
and counteroffers between the parties for the purchase of these two acres. 
Phillips testified that ETSWD had made no better than a $10,000.00 offer for
the property.  The Mankinses indicated they wanted $70,000.00 for the
property.  Key’s December 14 and January 4 letters to Schneider indicated there
was not going to be any agreement on a sale between ETSWD and Laird Hill regarding
the two acres.  There is sufficient evidence to establish that ETSWD met this
requirement before it filed its condemnation petition.  

             Thirdly
under this section, Laird Hill claims that ETSWD’s board of directors did not properly
authorize the filing of the condemnation proceeding against Laird Hill before
it filed its condemnation petition.  Laird Hill contends that the summary
judgment evidence shows that ETSWD’s President, Ricky Clements, made this
decision.  In its related fourth contention under this section, Laird Hill
argues that ETSWD could not allow its governing board to delegate the power of
eminent domain to its executive committee, the committee did not have the
authority to condemn, and implicitly, that the condemnation was void.  Laird
Hill argues that ETSWD’s attempted actions to retroactively ratify the
condemnation decision show that ETSWD acted fraudulently, in bad faith, or
arbitrarily or capriciously. However, as we have concluded earlier, the
governing body of ETSWD, through a corporate resolution, did authorize the
condemnation proceeding on April 11, 2006. 

            Fifth,
and lastly under this section, Laird Hill contends that Clements testified at an
injunction hearing in January 2006 that ETSWD had other wells that could be
used to dispose of the salt water that it was pumping into the Bass #5,
implying that such a statement means that there was no public necessity to
condemn the well.  We have reviewed Clements’s testimony at the injunction hearing
and determined that Laird Hill has taken Clements’s statement out of context. 
Previously in the injunction hearing, Clements had testified as to the
necessity for the capacity of ETSWD’s system of pipelines and disposal wells to
have the Bass #5 online.  He testified that ETSWD’s salt water disposal well
system was close to full capacity and that it was necessary to have the Bass #5
in operation.  Clements also testified that there were currently forty-seven oil
and gas wells producing salt water that went into their pipeline system.  He
said that there were thirty-two other oil and gas wells which could be brought
into production in the Woodbine Formation.  The specific question that Laird
Hill points to in making this contention was that Clements was asked, “Do you
have any other salt water wells in that location that you could pump this water
into?”  Clements answered, “Yes.”  However, we conclude that the trial court was
correct in determining that this testimony concerned whether the pipeline system
physically allowed salt water to be pumped into any of the other eighty-seven salt
water disposal wells in the system, rather than the capacity issue of whether the
Bass #5 was needed for ETSWD’s salt water disposal system.

ETSWD’s Rights
Upon Termination of Lease

            Laird
Hill complains that the trial court erred in granting summary judgment that ETSWD
had the right for six months after the end of the final termination of the
lease to remove or plug any salt water disposal well and to enter upon the
premises and remove any and all property and equipment owned on the premises by
ETSWD.  As we have already determined, a condemnor that places improvements
upon real property owns those improvements.  Further, the court’s holding
comports with the language of the lease between ETSWD and the Mankinses, which
stated that

 

[u]pon final termination of this lease, and within six
(6) months thereafter, Grantee shall have the right to enter upon the premises
and remove therefrom any and all property and equipment belonging to it or
heretofore or hereafter placed on said above-described land by it.

 

 

Lessees are
entitled to enforce lease provisions upon the termination of a lease.  See
Fike v. Riddle, 677 S.W.2d 722, 727 (Tex. App.–Tyler 1984, no
pet.) (stating that oil and gas lessee has right to enforce similar provision
as that in the instant case absent certain equitable circumstances not present
here).

Lost
Profits Based Upon Trespass Claim

            Laird
Hill argues that it is entitled to lost profits for the period during which ETSWD
was trespassing upon its property. Laird Hill’s argument is predicated on its
earlier contentions that it owned the wellbore for the Bass #5 well and further
that the trial court erred in concluding that ETSWD’s condemnation of the two
acre tract was proper.  We have overruled these contentions.  Nevertheless,
lost profits as a separate item of damages over and above the fair market value
of the land taken are not recoverable.  See State v. Travis, 722
S.W.2d 698, 699 (Tex. 1987).  Additionally, the trial court submitted Laird
Hill’s trespass claim to the jury, and it made a finding that no trespass had
occurred upon the property prior to the filing of the condemnation proceeding. 
Thus, Laird Hill is not entitled to lost profits. 

Objections
to Summary Judgment Evidence

            Laird
Hill contends there were twenty-one statements in ETSWD’s affidavits that the
trial court erroneously admitted as summary judgment evidence over its
objection.  Five of the statements were made in affidavits by Clements
primarily regarding the background and operation of the field.  The other
sixteen of the statements related to the issue of ETSWD’s trespass, as alleged
by Laird Hill.

            Whether
to admit or exclude evidence is a matter committed to the trial court’s sound
discretion.  Interstate Northborough P’ship v. State, 66 S.W.3d
213, 220 (Tex. 2001).  To reverse a judgment based on a claimed error in
admitting or excluding evidence, the party must show that the error probably
resulted in an improper judgment.  Id.  In determining if the
excluded evidence probably resulted in the rendition of an improper judgment, a
successful challenge to a trial court’s evidentiary rulings requires the
complaining party to demonstrate that the judgment turns on the particular
evidence excluded or admitted.  Id.  

            We
have reviewed the entire record regarding these twenty-one statements about
which Laird Hill complains.  Clements’s five statements regarding the history
and background of the Field are duplicated throughout the record, particularly
in Laird Hill’s appraiser’s report, which was part of the summary judgment
evidence.  See Dixie Dock Enters. v. Overhead Door Corp., No.
05-01-00639-CV, 2002 WL 244324, at *4 (Tex. App.—Dallas Feb. 21, 2002) (not
designated for publication) (concluding objection to certain summary judgment
evidence is waived if complaining party failed to object to same or similar
evidence establishing same point elsewhere in summary judgment record) (citing Richardson
v. Green, 677 S.W.2d 497, 501 (Tex.1984)).  Further, we cannot
determine that Clements’s statements controlled on any material issue
dispositive to this case.  See Interstate Northborough, 66 S.W.3d
at 220.  Finally, with reference to the sixteen statements relating to Laird
Hill’s trespass claim, we note that the trespass issue was fully tried before
the jury.  Therefore, these statements had no effect on the trial court’s
summary judgment rulings.  

Laird
Hill’s first issue is overruled.

 

Admission of Evidence and Jury Charge

            Laird
Hill’s second issue asks whether, “[a]s a result of its erroneous partial
summary judgment, did the trial court err in excluding evidence in submitting
the case to the jury?”  Because we have overruled Laird Hill’s first issue, we
need not address this issue.  See Tex.
R. App. P. 47.1.  

 

Disposition

            Having
overruled Laird Hill’s first issue, and having concluded that its second issue
is unnecessary to the disposition of this appeal, we affirm the
judgment of the trial court.

 

                                                                                    James T. Worthen

                                                                                            
Chief Justice

 

 

Opinion delivered June 30, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

(PUBLISH)









                [1]
Laird Hill Salt Water Disposal, Ltd. and Boltserv, Inc. are related companies
with the same owners.





[2]
See Hubenak v. San Jacinto Transmission Co., 141 S.W.3d 172, 179
(Tex. 2004).  





[3] For corporations such as ETSWD formed prior to
January 1, 2006, the Texas Business Organizations Code (the Code) states that
former law—i.e. the Texas Business Corporations Act (TBCA) here—applies to
lawsuits filed before its mandatory application date of January 1, 2010, unless
the corporation elected to adopt the Code at an earlier date.  Compare Tex. Bus. Code Ann. §§ 402.001,
402.003, and 402.005 with § 402.014 (Vernon Supp. 2010). This
lawsuit was filed before that date, and the record is unclear whether ETSWD
made the election to have the Code, instead of the expired TBCA, apply to it. 
Nonetheless, in our review of the pertinent Code section and its predecessor,
the now repealed Article 2.36 of the TBCA, we conclude that the sections are
substantially similar in all material respects. Compare Tex. Bus. Code Ann. § 21.416 with Tex. Bus. Corp. Act art. 2.36
(repealed). For ease of reference, we refer to the new Code sections in
our analysis.

 





[4]
In Lin, a college vice-chancellor authorized the filing of the
condemnation petition prior to the governing body’s authorizing the
condemnation proceeding.  Lin, 948 S.W.2d at 335.